UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JOSEPH O.,**[1] | **Case No. 3:17-cv-01841-CL** |
| **Plaintiff,** | |
| | **REPORT AND** |
| **v.** | **RECOMMENDATION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**CLARKE**, Magistrate Judge:

Joseph O. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administrations ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the reasons below, the Commissioner's decision should be REVERSED and this case should be REMANDED for further proceedings.

---

[1] In the interest of privacy, this Report and Recommendation ("R&R") uses only the first name and the initial of the last name of the non-governmental party or parties in this case. When applicable, this R&R uses the same designation for a non-governmental party's immediate family member(s).

## BACKGROUND

Born in October 1983, Plaintiff was thirty-six old on the amended alleged onset date. Tr. 18, 36, 170, 1547–48. Plaintiff completed police academy training in 2012; and, at the time of his hearing, he was taking online college courses. Tr. 227, 294, 346, 355, 1549–51. He is a United States Army veteran and has past work experience as a communications technician and panel assembler. Tr. 1571. Plaintiff alleged disability due to post-concussion syndrome, post-traumatic stress disorder ("PTSD"), seizure disorder, migraines, cervical spine arthritis, unstable right knee, thoracolumbar sprain, and right knee pain. Tr. 226.

Plaintiff applied for DIB on June 26, 2014, with an amended disability onset date of March 12, 2015, and a date last insured of Match 31, 2016. Tr. 18, 21, 170–76. Plaintiff timely requested an administrative hearing and appeared before an Administrative Law Judge ("ALJ") at a hearing on November 30, 2016. Tr. 118–19, 1544–78. Plaintiff testified at the hearing, as did a vocational expert. Tr. 1544–78. On May 15, 2017, the ALJ issued a decision finding Plaintiff not disabled under the Act. Tr. 18–37. After the Appeals Council denied his request for review, Plaintiff timely filed a complaint in this court. Tr. 1-6.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.     Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues.

    a.     At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c),

416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ made the following findings:

1. Plaintiff had not engaged in substantial gainful activity from the period of March 12, 2015, the amended alleged onset date, through March 31, 2016, the date last insured. Tr. 21.

2. Plaintiff has the following severe impairments: degenerative disc disease; seizure disorder; migraines; vertigo; right chronic knee strain; and obstructive sleep apnea; history of traumatic brain injury; depressive disorder; anxiety disorder; post-traumatic stress disorder ("PTSD"); and cognitive disorder. *Id.*

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

   a. Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), but with the following limitations: He could never crawl and climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel,

crouch, and climb ramps or stairs. He had to avoid concentrated exposure to hazards. He could perform simple repetitive tasks consistent with unskilled work. He could never have public contact. He could have occasional superficial contact with co-workers. He could have occasional contact with supervisors. He could perform low-stress work, defined as work that required few decisions/changes. He could perform at a standard or ordinary pace, but not at a strict production rate pace in which he had no control over the speed of his work. Tr. 23–24.

4. Plaintiff is unable to perform any past relevant work. Tr. 36.

5. Considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that the claimant can perform. *Id.*

The ALJ therefore concluded Plaintiff was not disabled as defined by the Act. Tr. 37.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *See also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.,* *466* F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock,* 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56.

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner,* 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff assigns error to seven portions of the ALJ's decision. First, he contends the ALJ erred by not finding certain impairments severe at step two. Second, Plaintiff asserts that the ALJ erroneously found his impairments did not satisfy a Listing at step three. Third, he contends the ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's Veterans Affairs ("VA") disability rating. Fourth, he argues the ALJ improperly discounted his subjective symptom testimony. Fifth, Plaintiff argues the ALJ erroneously rejected the third-party statement from his wife. Sixth, Plaintiff asserts the ALJ erroneously rejected relevant medical opinion evidence. Seventh, and finally, he challenges the ALJ's step five finding.

## I.     The ALJ properly evaluated Plaintiff's severe impairments at step two.

Plaintiff asserts the ALJ erred in not finding "chronic lumbosacral/cervical strain" and "history of shrapnel injury to right elbow" severe. At step two of the sequential process, the ALJ must determine whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert,* 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). To show a severe medically determinable impairment requires a determination that (1) the impairment results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques; and (2) the severity must be such that it significantly decreases the physical or mental ability of a person to perform basic work activities. 20 C.F.R. § 404.1508 (effective through March 26, 2017).[2] The impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508. "Signs, symptoms and laboratory findings" are defined as:

> (a) Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.
>
> (b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques[.]
>
> (c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies . . ., (X-rays), and psychological tests.

*Id.*

---

[2] The Court notes that for claims filed on or after March 27, 2017, the Commissioner has amended and renumbered the relevant regulation for establishing a medically determinable impairment at 20 C.F.R. § 404.1521. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, *available at* 2017 WL 168819, at *5868 (Jan. 18, 2017). These changes, however, do not apply to this appeal. *See id.* at *5848 (explaining that the Commissioner's prior regulations "require[d] objective medical evidence consisting of signs or laboratory findings to establish impairments," and that the revisions "merely clarify this current policy").

Step two has been characterized as "a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). However, "[a]n impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (citation omitted) (emphasis in original). Further, "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citation and quotation marks omitted). Finally, even where an ALJ fails to identify a severe impairment at step two, but nonetheless considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment, any error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The Commissioner asserts the ALJ properly found Plaintiff's complaints of right elbow pain non-severe because it was "not documented by any acceptable clinical or laboratory findings" sufficient to establish it was a severe impairment. Tr. 21. In his reply, Plaintiff directs the Court to treatment notes that he asserts "shows medical findings indicating . . . ongoing pain symptoms relating to his right elbow shrapnel injury." Pl.'s Reply 6 (citing Tr. 371, 435, 524, 619, 1521, 1540). A review of those records, however, reveal that they are primarily Plaintiff's own subjective reports, which standing alone cannot establish the existence of severe medically determinable impairment. *See Ukolov*, 420 F.3d at 1005; *see also* SSR 16-3P, *available at* 2017 WL 5180304 at *3 (Oct. 25, 2017) ("If an individual alleges symptoms, but the medical signs and laboratory findings do not substantiate any medically determinable impairment capable of producing the individual's alleged symptoms, we will not evaluate the individual's symptoms at step two of our

two-step evaluation process."). Thus, the ALJ was not required to find Plaintiff's right elbow pain severe at step two.

The Commissioner next contends that Plaintiff failed to cite any medical signs or laboratory findings that establish the existence of "chronic lumbosacral/cervical strain" during the relevant period. Further, the Commissioner argues, because the ALJ found Plaintiff's degenerative disc disease severe any error was harmless. The Court agrees. Assuming without deciding that Plaintiff could produce evidence sufficient to compel finding his "chronic lumbosacral/cervical strain" severe at step two, any error was harmless because the ALJ considered the effects of Plaintiff's back and musculoskeletal pain in the context of degenerative disc disease, which the ALJ found severe at step two. *See Clemens v. Berryhill*, No. 3:16-cv-02123-MC, 2018 WL 1730723, at *2 (D. Or. Apr. 10, 2018) (observing alleged error in rejecting an impairment as severe at step two was harmless because the ALJ "considered the effects of [the impairment] in the context of degenerative disc disease of the lumbar spine") (citing *Lewis*, 498, F.3d at 911).

As such, the ALJ's step two finding should be affirmed as to this issue.

## II.    The ALJ's step three finding should be upheld.

In a three-sentence paragraph in his opening brief, Plaintiff assigns error to the ALJ's step three findings. Specifically, Plaintiff asserts that, "[w]hen Dr. Glassman's opinion is properly considered in conjunction with medical evidence, [he] meets Listings 11.02 and/or 11.03 due to his frequent seizure episodes despite medication compliance." Pl.'s Op. Br. 13. Beyond the bare assertion, however, Plaintiff fails to cite to or discuss any relevant language from either Listing, provide argument as to how evidence in the record applies to each element required by the Listings, or provide any citation to the administrative record. Because the issue was not argued with specificity the Court may affirm the ALJ on that basis alone. *See Carmickle v. Comm'r Soc. Sec.*

*Admin.*, 533 F.3d 1155, 1162 n.2 (9th Cir. 2003) ("[I]ssues not argued with specificity in briefing

will not be addressed."); *see also Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We

will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim,

particularly when, as here, a host of other issues are presented for review.").[3]

Moreover, an independent review of the ALJ's step three analysis reveals the ALJ's

interpretation of the record was rational and therefore must be upheld. *Batson*, 359 F.3d at 1193;

*see also Blake L. v. Berryhill*, No. 3:17-cv-01647-YY, 2019 WL 289098, at *12 (D. Or. Jan. 4,

2019) ("the ALJ's finding was a rational interpretation of the record and must be upheld, especially

given that '[l]isted impairments are purposefully set at a high level of severity because the listings

were designed to operate as a presumption of disability that makes further inquiry unnecessary'")

(citing *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013)), *adopted*, 2019 WL 281285 (D.

Or. Jan. 22, 2019).

As such, the ALJ's step three finding should be affirmed.

### III.     The ALJ failed to provide persuasive, specific, and valid reasons to reject Plaintiff's VA disability rating 100% for PTSD.

Plaintiff contends the ALJ failed to provide legally sufficient reasons for rejecting his VA

disability rating. The Ninth Circuit has instructed that "an ALJ must ordinarily give great weight

to a VA determination of disability." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694–

---

[3] In his reply, Plaintiff restates his assertion, providing marginally more detail, and then asserts the ALJ's failure "to even mention Listings 11.02 and 11.03" was clear legal error. Pl's Reply 6. Generally, a party waives any argument raised for the first time in a reply brief. *U.S. ex. rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1999 n.1 (9th Cir. 2009). In any event, the assertion lacks support in the record as the ALJ discussed Listing 11.02, devoting an entire paragraph of the decision, and concluded the medical evidence did not satisfy the elements required by the Listing. Tr. 22. As to Plaintiff's contention the ALJ erred by not discussing Listing 11.03, the ALJ was not required to do so because at the time of the ALJ's decision that Listing was no longer in place. 20 C.F.R. § 404, Subpt. P, App. 1, pt. A2 (effective March 27, 2017 through August 21, 2017) ("11.03 [Reserved]"); *Skaggs v. Berryhill*, No. 3:16-cv-01810-JR, 2018 WL 1631452, at *2 n.1 (D. Or. Mar. 7, 2018) (explaining that courts "evaluate ALJ decisions based on the Listings in place at the time the decisions were made"), *adopted*, 2018 WL 1629855 (D. Or. Apr. 4, 2018).

95 (9th Cir. 2009) (citing *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)). However, because the of the differences between the two programs, an ALJ may "give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (quoting *McCartey*, 298 F.3d at 1076).[4]

The ALJ discussed Plaintiff's VA rating and the medical records supporting it at length. Tr. 35 (citing Tr. 187–221, 410–21, 981–1012). The ALJ noted that Plaintiff had a 100%-service connected disability rating based on: PTSD (100%), seizure disorder (100%), migraines (50%), lumbar or cervical (20%), degenerative disc disease (10%), knee condition (10%), and limited flexion of the knee (10%). *Id.* The ALJ gave the VA rating "little weight," providing four specific reasons for its rejection. *Id.* First, the ALJ highlighted the differences between the two programs. Second, despite Plaintiff's 100% rating for seizures, treatment records showed medication helped control his symptoms. *Id.* Third, Plaintiff's other rated impairments were inconsistent with objective findings, which showed he received minimal treatment for his pain and migraine complaints. *Id.* Fourth, despite Plaintiff's 100% rating for PTSD, treatment records showed largely "unremarkable" findings, medication improved his symptoms, and he declined treatment recommendations such as therapy. *Id.*

The ALJ's first reason for rejecting the VA rating was legally insufficient. An ALJ cannot reject a VA rating solely because the SSA and VA's methodologies for determining disability differ. *Berry v. Astrue* 622 F.3d 1228, 1236 (9th Cir. 2010) ("Insofar as the ALJ distinguished the

---

[4] Recently, the applicable regulations were amended such that adjudicators are no longer required to provide any written analysis of disability decisions by other agencies for Social Security disability claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1504 (explaining that for Social Security disability claims filed "on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by another governmental agency or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits"). This amendment does not apply here, however, because Plaintiff filed his disability claim before March 27, 2017. Thus, the ALJ was required to consider the VA rating and explain the weight, if any, to assign it under relevant Ninth Circuit precedent.

VA's disability rating on the general ground that VA and SSA disability inquiries are different, her analysis fell afoul of *McCartey.*") (quoting *Valentine,* 574 F.3d at 695).

The ALJ did, however, provide "persuasive, specific, [and] valid reasons" for rejecting the VA rating relating to Plaintiff's seizures, pain, and migraines. *See Valentine*, 574 F.3d at 695. As noted, the ALJ cited numerous medical records that showed Plaintiff's seizures were controlled by medication despite his 100% rating. Tr. 27 (citing Tr. 45) (reporting grand mal seizures was managed well with medication); Tr. 31 (citing Tr. 326, 546, 568); Tr. 30 (citing Tr. 546 (denying "any issues" transitioning from Keppra to Oxcarbazepine for seizures control, and he reporting that "his last seizure was around December 2014."). The ALJ also cited treatment notes that showed Plaintiff received minimal treatment for his musculoskeletal pain. Tr. 26, 31, 371, 560. This was a valid reason to reject Plaintiff's 100% rating for seizure disorder as well as partial ratings for pain and migraines. *See Berry v. Astrue,* 622 F.3d 1228, 1236 (9th Cir. 2010) (affirming the ALJ's decision to give the Plaintiff's VA disability determination little weight based on inconsistency with other medical records that did not support a finding of 100% disability).[5]

The ALJ's reasoning for rejecting Plaintiff's 100% disability rating for PTSD, however, was not a "persuasive, specific, valid reason [] . . . supported by the record." *Valentine*, 574 F.3d at 694–95. Here, the ALJ's reasoning rejecting Plaintiff's 100% disability rating for PTSD was not supported by the record. Plaintiff's PTSD seriously impaired his functioning, causing "anxiety

---

[5] In his reply brief, Plaintiff asserts the Commissioner's reliance on the medical evidence cited in the ALJ's decision constitutes an impermissible *post hoc* rationalization upon which the Court may not rely. *See* Pl.'s Reply 2–3. The Court declines to read the ALJ's decision in a vacuum. *See Berry v. Astrue,* 622 F.3d 1228, 1236 (9th Cir. 2010) (affirming ALJ's rejection of VA rating as to specific impairments discussed in detail "[e]lsewhere in [the ALJ's] decision"); *see also Bahr v. E.P.A.,* 836 F.3d 1218, 1229 (9th Cir. 2016) ("Even when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'") (quoting *Alaska Dep't of Envtl. Conservation v. EPA,* 540 U.S. 461, 497 (2004)).

when around crowds, irritability, vigilance, and reactivity." Tr. 350–51. Moreover, Plaintiff's

PTSD was not effectively controlled through medication. *See* Tr. 350–51, 354, 561, 1397. And to

the extent Plaintiff was unable to obtain local mental health counseling, as one treating doctor

explained, Plaintiff faced "very legitimate obstacles." Tr. 1398–99. On remand, "the ALJ should

reconsider with appropriate deference the effect, if any, of the other bases for the VA's disability

determination" relating to Plaintiff's PTSD. *Berry*, 622 F.3d 1236 (upholding the ALJ's rejection

of portions of a VA rating for which the ALJ gave persuasive, specific, and valid reasons, but

remanding for the ALJ to reconsider others).

The ALJ should be reversed as to this issue.

**IV.**     **The ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony, with the exception of Plaintiff's mental health symptoms.**

Plaintiff contends the "ALJ discounted his credibility by generally reciting the medical

evidence and alleging vague inconsistencies between the record and [his] testimony." Pl.'s Op. Br.

16; *see also id.* ("The ALJ's analysis amounts to little more than nebulous assertion that the

claimant's allegation are inconsistent with the record."). In evaluating a claimant's subjective

symptom testimony, the ALJ must perform a two-stage analysis. In the first stage, the claimant

must produce objective medical evidence of one or more impairments which could reasonably be

expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th

Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected

to cause the severity of the symptom, but only to show that it could reasonably have caused some

degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of

the claimant's testimony regarding the severity of the symptoms. *Id.* Unless there is affirmative

evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's

subjective testimony must be clear and convincing. *Burch*, 400 F.3d at 680. The ALJ must identify

what testimony is not credible and what evidence undermines the claimant's complaints. *Id.*; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Additionally, the evidence upon which the ALJ relies must be substantial. *See Reddick*, 157 F.3d at 724; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

At his hearing, Plaintiff testified that he was currently attending online college classes fulltime, after struggling with on-campus classes. Tr. 1549–50. As for his physical symptoms, he testified that his back and knee injuries caused him to "have a hard time doing manual labor[.]" Tr. 1552. He explained that he has pain in his neck, lower and mid-back, both knees, and right elbow. Tr. 1555.

He testified that he has migraines "about twice a month" that leave him bedbound "for at least half the day if not multiple days with the light sensitivity and the pain." Tr. 1552. He also explained that medication helped alleviate the pain, but that it "pretty much puts [him] to sleep[.]" Tr. 1553. He also testified that he has "a major seizure or seizure probably once every two months," and that his current medication was "[m]aybe a little better" than his previous one. Tr. 1553–54. He explained that, since 2014, his vertigo had improved and he "do[esn't] have as many seizures as [he] did because [he] actually h[as] medication for it now." Tr. 1562. In his November 2015 function report, Plaintiff wrote that seizures prevent him "from driving or working in any positions that would be hazardous." Tr. 254.

As for his mental health symptoms, Plaintiff testified that his impairments caused "concentration issues" where he cannot focus "even though [he is] motivated to do" schoolwork and that his current medications were "not working." Tr. 1558–60. He further explained that he was unable to work because of "severe social issues," which caused him to be "constantly" medicated when out in public. Tr. 1552; *see also* Tr. 254 (reporting Plaintiff's "PTSD stops [him]

from going into crowded places"). At the time of the hearing, Plaintiff had a treating psychiatrist. Tr. 1557. However, he was unsure if he had a mental health counselor, and that it had been "[p]robably two years" since he last saw a counselor regularly because he had been unable "to get an appointment since then." *Id.* He explained that he would be interested in mental health counseling, but that he had "trouble getting [to the appointments] because usually it's all the way in Portland" and, because his wife has to drive him, attending created "a logistical nightmare" for his family. Tr. 1557.

### A. Physical Impairments

As for Plaintiff's complaints of knee and back pain, as well as migraines, the ALJ found that Plaintiff received only minimal treatment, "which strongly indicate[d] that medications effectively controlled his conditions." Tr. 31. The ALJ cited treatment notes that showed Plaintiff reported that "he had no need to address pain/comfort issues" related to his elbows and knee and rated his pain at only two out of ten on a ten-point scale. Tr. 26, 31; *see also* Tr. 371. An ALJ may infer that a claimant's pain is "not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008). The ALJ permissibly inferred Plaintiff's physical pain symptoms were effectively controlled by his medications. Tr. 31 (citing Tr. 560); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

As for Plaintiff's testimony that he had a major seizure "once every two months," the ALJ cited treatment notes that indicated his condition was effectively controlled through medication. Tr. 31 (citing Tr. 326, 546, 568). For example, in March 2016 Plaintiff denied "any issues" transitioning from Keppra to Oxcarbazepine for seizures control, and he reported that "his last

seizure was around December 2014." Tr. 30 (citing Tr. 546). This was a valid reason to reject Plaintiff's testimony. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (explaining that an ALJ may consider, among other factors the effectiveness of medication); *see also* Social Security Ruling ("SSR") 16-3p, *available at* 2017 WL 5180304 at *8 (Oct. 25, 2017) (adjudicators should consider, among other factors, the "type, dosage, *effectiveness*, and side effects of any medication an individual takes") (emphasis added).

### B. Mental Health Impairments

The ALJ, however, failed to supply a clear and convincing reasons to reject Plaintiff's mental health testimony. The ALJ asserted that Plaintiff's "irritability, concentration, energy, and motivation somewhat improved with medication." Tr. 31–32. The assertion is not supported by the record. For example, it is unclear how the ALJ's citation to a list of medications Plaintiff was taking in November 2015 shows improvement. *See id.* (citing Tr. 354). Indeed, at the same appointment Plaintiff reported that his "energy level" as well as "concentration" were among his "chief complaints," and he endorsed "*ongoing* symptoms consistent with post-traumatic stress including increased anxiety when around crowds, irritability, vigilance, and reactivity." Tr. 350–51 (emphasis added). Although there are reports that Plaintiff experienced limited improvements in his concentration, the records cited by the ALJ also show Plaintiff's irritability, energy, and motivation did not improve. *See* Tr. 561 (noting that Plaintiff required taking on-line classes because he could not "tolerate being around other students"); Tr. 1397 (reporting "concentration, energy, and motivation are still poor"). This limited level of improvement was not a clear and convincing reason to reject Plaintiff's testimony about his mental health symptoms. *Cf. Clemens*, 2018 WL 1730723, at *4 (D. Or. Apr. 10, 2018) ("Moreover, even if Clemens experienced limited improvement after November 2010, there is a sizeable gulf between tolerating pain levels and the

ability to sustain gainful employment on a regular and continuing basis, as the Ninth Circuit has frequently reiterated."). Further, "[t]hat a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan*, 246 F.3d at 1205.

The Commissioner next cites a report that Plaintiff had a "pleasant and cooperative manner" at medical appointments and asserts those records indicate that he could tolerate some level of social interaction in the workplace. A review of the record, however, reveals that while Plaintiff presented with an appropriate affect, alert, oriented to time and place at various medical appointments, he also regularly presented as irritable and agitated. Tr. 323, 330, 586; *see also* Tr. 562 ("Mood 'a[**]-holish.'").

The Commissioner also asserts that Plaintiff's failure to follow through with mental health recommendations for his PTSD was a sufficient reason to reject his testimony. An ALJ may discount testimony for "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *see also* SSR 16-3p, *available at*, 2017 WL 5180304 at *9. However, an ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain" the claimant's failure to follow a treatment plan. *Orn*, 495 F.3d at 638 (quotation omitted). Moreover, as the Ninth Circuit has explained: "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (internal quotation marks omitted).

At the hearing Plaintiff testified that he would be interested in seeing a VA counselor, that one of the barriers to treatment was the travel time to Portland, and that he had requested outpatient treatment closer to his home. Tr. 1557. That testimony is consistent with treatment notes indicating

that Plaintiff "d[id not] feel travel to Portland or Vancouver for therapy would be practical." Tr. 1396. Indeed, in the same treatment note the doctor noted the travel time to Portland or Vancouver was a "very legitimate obstacle" for not engaging in therapy and that Plaintiff was "making a good-faith effort" to address his PTSD symptoms. Tr. 1398–99.[6] Thus, Plaintiff's failure to follow through with treatment recommendations was a not a clear and convincing reason to reject his testimony related to PTSD. *See Lord v. Berryhill*, No. 6:17-cv-00255-SI, 2018 WL 1811472, at *6 (D. Or. Apr. 16, 2018) (holding a "lack of medical treatment" was not "a clear and convincing reason to discount [the claimant's] testimony regarding his mental health limitations").

Finally, the ALJ rejected Plaintiff's testimony based on his daily activities. An ALJ may use activities of daily living to discredit a claimant's testimony where the activities meet the threshold for transferable work skills or contradict the claimant's testimony. *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

Here, the Commissioner asserts Plaintiff's ability to attend on-line college courses with minimal problems, playing video games, helping his wife care for their young son, engaging in daily living independently, socializing with neighbors, and visiting the gym were sufficient to reject his symptom testimony. The assertion is not supported by the record. For example, although Plaintiff reported he was doing well in school at February 2016 appointment, in the same treatment

---

[6] The same treatment note also undercuts the ALJ's assertion that Plaintiff declined treatment options for his obstructive sleep apnea. Tr. 32. Indeed, Plaintiff was "trying to move his appointment up so that they [could] look into treatment options as soon as possible." Tr. 1396.

note he explained he had to take online classes because he "c[ouldn't] tolerate being around other students." Tr. 561; *see also id.* (reporting Plaintiff could "barely go to campus to sign up for classes without 'wanting to punch someone in the throat'" and noting "that his anxiety level was 'shooting through the roof' when he went to campus to pick up books"). Moreover, the following treatment note relied on by the Commissioner indicates that Plaintiff had unenrolled from one of his four courses and that Plaintiff had "experienced an increase in feelings of stress and overwhelm [sic], high anxiety and is more easily triggered since starting classes." Tr. 569.

As for the other activities cited by the Commissioner, this minimal level of activity is not at odds Plaintiff's symptom testimony. *Vertigan,* 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.") (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).[7]

In sum, while the ALJ supplied clear and convincing reasons to discount Plaintiff's testimony relating to his physical impairments, the ALJ erroneously rejected Plaintiff's testimony relating to his mental health impairments. *See Garrison,* 759 F.3d at 1015 (evaluating separately the ALJ's analysis of the claimant's physical pain and mental health testimony). As such, the ALJ's subjective symptom evaluation should be affirmed as to Plaintiff's physical impairments and should be reversed as to Plaintiff's mental health impairments.

---

[7] The Commissioner's final rationale for rejecting Plaintiff's testimony—purported inconsistent statements—is not a valid reason to reject Plaintiff's testimony. Prior to the implementation of SSR 16-3p, the ALJ was permitted to reject a claimant's testimony based upon inconsistent statements. *See, e.g., Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002) (upholding adverse credibility determination where claimant had "present[ed] conflicting information about her drug and alcohol use"). However, pursuant to SSR 16-3p "adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of the individual's symptoms should not be to determine whether he or she is a truthful person." 2017 WL 5180304 at *11; *see also Russell v. Berryhill,* 2018 WL 2948560, at *3 (W.D. Wash. June 13, 2018).

## V.   The ALJ properly rejected the third-party statement from Plaintiff's wife.

Plaintiff alleges that the ALJ improperly rejected the lay witness testimony of his wife. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114; (remaining citation omitted)). Further, the reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless error. *Molina*, 674 F.3d at 1121–22.

Plaintiff's wife, Alisha A., completed a function report in November 2015. She explained that Plaintiff had significant problems with lifting heavy items, standing, walking, and performing postural movements due to pain in his knee and back. Tr. 232, 237. She wrote he struggled with memory, concentration, completing tasks, handling stress, handling changes in routine, getting along with others, and being in crowded places due to anxiety and PTSD. Tr. 232, 237–38.

The ALJ discussed the function report at length, ultimately assigning it partial weight. Tr. 33–34. The ALJ gave multiple reasons to reject the function report, the first of which was sufficiently germane to reject the report. The ALJ rejected the statement because her statement regarding the severity of Plaintiff's pain symptoms was inconsistent with objective findings indicating Plaintiff received only minimal treatment and regularly had normal physical

examination findings. Tr. 34. *see also* Tr. 371. Although Plaintiff takes issue with the ALJ's lack of citation to the record, inconsistency with the medical record is a sufficient reason to discredit lay testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, the ALJ identified the inconsistency after a thorough discussion of Plaintiff's subjective symptom testimony in which the ALJ cited specific medical evidence in the record while rejecting Plaintiff's reports of musculoskeletal pain. That was sufficient. *See Earl v. Colvin*, No. 6:12-cv-01306-SI, 2013 WL 5819107, at *8 (D. Or. Oct. 29, 2013) (affirming an ALJ's rejection of lay witness testimony where "[i]mmediately following the analysis of [of the claimant's subjective symptom testimony], the ALJ considered and rejected the similar testimony of lay witnesses . . . based on substantially similar reasons").

The ALJ identified a sufficiently germane reason supported by the record and should be affirmed as to this issue.

## VI. The ALJ failed to provide a reason to reject Drs. Kessler and Hennings limitation that Plaintiff was capable of only one- to two-step tasks.

Plaintiff challenges the ALJ's weighing of the medical opinion evidence. In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan*, 246 F.3d at 1201. "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.*

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick*, 157 F.3d at 725

("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). An ALJ may "reject the opinion of a non-examining physician by reference to specific evidence in the record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

At the initial and reconsideration levels, state agency doctors Ben Kessler, Psy.D., and Bill Hennings, Ph.D., opined that Plaintiff was capable of "carry[ing] out simple routine instructions (1–2 steps) [and that he was] not able to carry out more detailed instructions." Tr. 80, 97. The ALJ gave "partial weight" to the doctors' opinions, providing a litany of examples of evidence that was "consistent" with their opinions, but stated he included "more restrictive limitations in the residual functional capacity based on new medical evidence and to prevent exacerbation of [Plaintiff's] mental health problems." Tr. 34–35.

The Commissioner essentially asserts because the ALJ's RFC found Plaintiff "could perform simple routine tasks consistent with unskilled work," he implicitly found that Plaintiff was not limited to one- to two-step tasks. This ignores, however, the ALJ's own stated conclusion that he included more restrictive limitations than those opined by doctors Kessler and Hennings, which is not supported by the record. *Compare* Tr. 23–24 (RFC limiting Plaintiff to "simple routine tasks consistent with unskilled work"), *with* Tr. 80, 97 (Doctors Kessler and Hennings "limiting simple routine instructions (1–2 steps)"); *see also Dschaak v. Colvin*, No. 3:13-cv-02127-MA,

2015 WL 181803, at *5 (D. Or. Jan. 14, 2015) (collecting cases explaining the distinction between "simple, repetitive tasks" and the *more limiting* "one-and-two step instructions").[8]

District courts in this Circuit regularly reverse "ALJ decisions imposing a 'simple, repetitive tasks' RFC limit where the ALJs fail to address and distinguish conclusions by doctors that claimants can perform one-and-two step instructions." *Wilson v. Colvin*, 2017 WL 1861839, at *5–7 (N.D. Cal. May 9, 2017) (holding that ALJs must "give a reasoned explanation" in favor adopting "simple, repetitive task" limitations over "one-and-two step instructions"); *see also Vangemert v. Berryhill*, 2019 WL 2610125, at *4 (D. Nev. Mar. 7, 2019) (holding it is error for an ALJ to implicitly reject opinions limiting claimants to one-to two-step tasks by adopting "a 'simple, repetitive tasks' limitation in the RFC" without providing an explanation), *adopted*, 2019 WL 2603085 (D. Nev. June 25, 2019).

As such, because the ALJ failed to give a sufficient reason for not adopting doctors Kessler's and Hennings's one- to two-step tasks limitation the ALJ should be reversed as to this issue.[9]

---

[8] The Commissioner's *post-hoc* reliance of the opinion of Gregory Cole, Ph.D., was not articulated by the ALJ and this Court may not rely on it to affirm ALJ. *Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

[9] The Court briefly addresses Plaintiff's assertion that the ALJ erred by improperly rejecting the opinion of Anthony Glassman, M.D., the physician who completed Plaintiff's VA disability rating. Plaintiff cites to no authority for the proposition that a VA disability rating is simultaneously a medical opinion that an ALJ must also evaluate under the regulations for medical opinion evidence. Indeed, an independent review by the Court reveals quite the opposite. *See, e.g., Yuvienco v. Astrue*, No. 10-cv-0687-TC, 2011 WL 4704264, at *3 (D. Or. July 18, 2011) ("This argument is not persuasive because a VA rating decision is not a medical opinion. It is an administrative finding under the regulations governing VA disability decisions."), *adopted*, 2011 WL 4596126 (D. Or. Sept. 30, 2011). Accordingly, the ALJ was not required to evaluate the VA disability rating as a medical opinion, but was required to—and did—evaluate it as required by Ninth Circuit Case law. *See* section III, *supra*.

**VII.     The ALJ's step five finding should be reversed.**

The RFC reflects the most an individual can do. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL 374184. An ALJ may rely on the testimony of a VE to determine whether a claimant retains the ability to perform past relevant work at step four, or other work in the national or regional economy at step five. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only those limitations that are supported by substantial evidence in the hypothetical posed to a VE. *See id.* at 1163-65. "Conversely, an ALJ is not free to disregard properly supported limitations." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886(9th Cir. 2006). In other words, limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163–65.

Plaintiff asserts the ALJ's step five finding is not supported by substantial evidence because the hypothetical posed to the VE failed to include all of Plaintiff's limitations. Specifically, Plaintiff contends that he was limited to jobs requiring Level I reasoning based on the erroneously rejected one- to two-step tasks limitation. Therefore, Plaintiff contends, the inclusion of Industrial Cleaner and Laundry Worker, which require Level II reasoning, constituted error.[10] The Commissioner asserts that Plaintiff was not limited one- to two-step tasks and therefore Plaintiff's mental limitations were not inconsistent with Level II reasoning. The Court need not resolve the

---

[10] *See* CLEANER, INDUSTRIAL, Dictionary of Occupational Titles ("DOT") #381.687-018, *available at* 1991 WL 673258; LAUNDRY WORKER I, DOT #361.684-014, *available at* 1991 WL 672983. Notably, Plaintiff mistakenly asserts the Mail Sorter, DOT #209.687-026, *available at* 1991 WL 671813, and Price Marker, DOT #209.587-034, *available at* 1991 WL 671802, were among the jobs the ALJ found Plaintiff could perform in the national economy. The VE did testify about those jobs at the hearing in response to different hypothetical RFC. Tr. 1574. However, the ALJ's decision did not use those jobs in his decision. Tr. 37. As such, the Court declines to discuss them further.

parties' dispute. On remand the ALJ must accept the reviewing doctors' one- to two-step tasks limitation or provide a legally sufficient reason for rejecting the limitation.

Here, the ALJ improperly discredited portions of Plaintiff's testimony, erroneously rejected Plaintiff's 100% VA rating for, and failed to give a reason for rejecting reviewing doctors one- to two-step tasks limitation. By failing to incorporate all of Plaintiff's limitations into the RFC and, by extension, the dispositive hypothetical question posed to the VE, the ALJ's conclusion lacks evidentiary support. *Robbins*, 466 F.3d at 886; *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.") (internal citation omitted). The case therefore should be remanded.

The ALJ's step five finding should be reversed and this case should be remanded.

## REMAND

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ improperly rejected Plaintiff's 100% VA disability rating for PTSD, erroneously rejected portions of Plaintiff's testimony, and failed to articulate a reason for departing from the one- to two-step task limitation opined by doctors Kessler and Hennings. However, because "[t]he touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error, the Court must assess whether outstanding issues remain *before* considering whether to credit erroneously rejected evidence as a matter of law. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). The Court should find outstanding issues remain. Although the ALJ provided legally insufficient reasons to reject the VA rating and portions of Plaintiff's testimony, the overarching errors with the ALJ's analysis stemmed from a lack of specificity with her reasoning, not necessarily a lack of evidence in the record. *See Sandford M. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-0571-AC, 2018 WL 6817048, at *7 (D. Or. Oct. 17, 2018) (remanding a step two of the credit-as-true analysis because "the ALJ's errors stemmed from a lack of specificity with her reasoning, not a lack of available contrasting evidence in the record"), *adopted*, 2018 WL 6816994

(D. Or. Dec. 26, 2018). Moreover, with respect to the ALJ's error rejecting the limitation opined by doctors Kessler and Hennings, the Commissioner highlighted evidence that arguably casts doubt on the doctors' conclusion.

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the Court recommends that the decision of the Commissioner should be REVERSED and this case should be REMANDED for further proceedings. Upon remand, the ALJ should: (1) provide a legally sufficient reason for rejecting Plaintiff's 100% VA disability rating, or give the rating appropriate deference; (2) reassess Plaintiff's subjective symptom testimony related to his mental health impairments; should the ALJ determine him not credible, the ALJ must provide clear and convincing reasons for this determination; (3) accept the one- to two-step task limitation opined by doctors Kessler and Hennings, or provide a legally sufficient reason for its rejection; (4) obtain additional VE testimony based on a reformulated RFC incorporating all of Plaintiff's limitations, including inquiring into conflicts between the VE testimony and DOT, if applicable; and (5) conduct any additional necessary proceedings.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is entered. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* Fed. R. Civ. P. 72, 6. The failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this ___5___ day of September, 2019.

MARK D. CLARKE
United States Magistrate Judge